**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X        __-CV-_____

CURTAYASIA TAYLOR,

                      Plaintiff,        **COMPLAINT**

            - against -

METROPOLITAN TRANSPORTATION        **PLAINTIFF DEMANDS**
AUTHORITY, NEW YORK CITY TRANSIT        **A TRIAL BY JURY**
AUTHORITY, and ROTATOR STAFFING
SERVICES, INC.

                    Defendants.
------------------------------------------------------------------X

       The Plaintiff, Curtayasia Taylor, by her attorneys, Phillips & Associates, Attorneys at Law, PLLC, hereby complains of the Defendants, Metropolitan Transportation Authority, New York City Transit Authority, and Rotator Staffing Services, Inc., and alleges as follows:

## NATURE OF THE CASE

       1.    Plaintiff brings this action for Unlawful Discrimination and Retaliation in employment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL"). The Plaintiff, an executive assistant for Defendants, was subjected to disparaging and discriminatory comments about her religion and forced to watch videos about Islam during work hours by her direct supervisor. When Plaintiff complained of this unlawful treatment, she was terminated. By this action Plaintiff demands all remedies available in law and equity including, but not limited to, back pay, front pay, compensatory damages, punitive damages, and attorneys' fees and costs. Plaintiff demands a trial by jury.

## PARTIES

2. Plaintiff **Curtayasia Taylor** is a citizen of New York and resides in Bronx, New York.

3. Defendant **Metropolitan Transportation Authority** ("MTA") is a public benefit corporation chartered by the New York State Legislature under the Metropolitan Transportation Authority Act, N.Y. Pub. Auth. Law § 1260 *et seq.*

4. Defendant **New York City Transit Authority** ("NYCTA") is a public benefit corporation created by statute pursuant to N.Y. Pub. Auth. Law § 1201 *et seq.*

5. Defendant **Rotator Staffing Services, Inc.** ("Rotator Staffing") is a New Jersey corporation with its corporate headquarters located at 25 Kennedy Blvd, East Brunswick, NJ, 08816.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States.

7. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the Plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

8. The Southern District of New York is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PROCEDURAL PREREQUISITES

9. Plaintiff filed charges of discrimination upon which this complaint is based with the Equal Employment Opportunity Commission ("EEOC").

10. The EEOC issued Plaintiff a Notice of Right to Sue on December 22, 2017.

11. This Action is being commenced 90 days of Plaintiff's receipt of said Notice of Right to Sue.

## FACTUAL ALLEGATIONS

12. Ms. Taylor began her employment with the MTA working for NYCTA on or about January 30, 2017. She received the position with the MTA through staffing agency Rotator Staffing Services, Inc. Ms. Taylor's rate of pay was $28 per hour. She was scheduled to work Monday-Friday for eight hours each day.

13. Ms. Taylor's position with the MTA and NYCTA was "Executive Assistant". As an executive assistant, Ms. Taylor's job duties consisted of performing administrative tasks for her direct supervisor, Mr. Masood.

14. Rotator Staffing was responsible for paying Ms. Taylor, as well as assigning her to work at a specific company or government entity. MTA and NYCTA maintained the power to hire and terminate Ms. Taylor, set her hours, set the location she was to work at, assign the work she was to perform, and discipline her.

15. Mr. Masood is an MTA employee and worked for NYCTA. Mr. Masood was Ms. Taylor's direct supervisor, and had the power to hire, fire, and alter the terms and conditions of Ms. Taylor's employment.

16. Upon information and belief, Mr. Masood is Muslim.

17. Ms. Taylor does not identify as Muslim.

18. From the very beginning of Ms. Taylor's employment with MTA and NYCTA, Mr. Masood engaged in a pattern of daily harassment of Ms. Taylor regarding Ms. Taylor's religion.

19. During a conversation between Ms. Taylor and Mr. Masood on January 30, 2017, Mr. Masood asked Ms. Taylor if she would be able to work at a different MTA location than the one to which she was originally assigned. Ms. Taylor asked if she would be able to leave the alternate location at 4:30, as she was currently deciding between two schools to send her child to, and one of the school locations would be quite far from the alternate MTA location. Mr. Masood then began to ask Ms. Taylor where the children's father was and what the two schools were.

20. Ms. Taylor told Mr. Masood the location of the two schools. Mr. Masood recognized one of the locations and stated, "There's only a Muslim school at that location."

21. Mr. Masood then asked Ms. Taylor if she was Muslim. Ms. Taylor felt this question was unprofessional, but decided to remain cordial as it was her very first day of work. She explained that in 2009 she had briefly converted to Islam, but decided to convert back to Christianity as she felt it was the right religion for her. She concluded by stating that the Islam-affiliated school was a good school with a good reputation, and that was why she was considering it for her child.

22. When Mr. Masood learned that Ms. Taylor's child might attend an Islam-affiliated school, he immediately and disparagingly asked Ms. Taylor why she would enroll her children in a Muslim school "because [she is] not Muslim."

23. Again, Ms. Taylor reluctantly responded to Mr. Masood's discriminatory question by stating that she was considering enrolling her child at the school because it was a good school. Mr. Masood simply repeated, "But you're not Muslim."

24. Mr. Masood then spent the next twenty minutes telling Ms. Taylor that Islam is better than Christianity. He also questioned Ms. Taylor's decision to convert back to Christianity from Islam, and made disparaging remarks about her decision to do so.

25. The next day, January 31, 2017, Mr. Masood and Ms. Taylor traveled to the MTA's Sea Beach office location during work hours. While there, Mr. Masood began to instruct Ms. Taylor on how to access YouTube on the office computer. He then told Ms. Taylor to search for a video by a certain Muslim prophet and to listen to the prophet's analysis of the Quran. Mr. Masood then told Ms. Taylor that the prophet had multiple YouTube video tutorials and that Mr. Masood "was sure [Ms. Taylor] would understand that Islam is the right path after watching these videos."

26. Mr. Masood then instructed Ms. Taylor that she *must* watch the YouTube videos regarding Islam. He instructed her to watch one video each day.

27. The next day, February 1, 2017, Mr. Masood asked Ms. Taylor if she watched the videos on Islam. Ms. Taylor attempted to change the subject, however Mr. Masood was persistent in his discussion about religion. Mr. Masood then stated, "Once you watch all of the tutorials you will go back to Islam."

28. Over the next week, Mr. Masood again asked Ms. Taylor whether she watched the videos on Islam, and also stated that he would "convince her to change her faith."

29. On or about February 3, 2017, Ms. Taylor complained by email to Rotator Staffing about the religious discriminatory conduct by Mr. Masood.

30. Upon information and belief, Rotator Staffing reached out to MTA's Equal Employment Opportunity ("EEO") office to inform them of the discriminatory conduct.

31. On or about February 6, 2017, Ms. Taylor met with members of MTA's EEO office. During this meeting, Ms. Taylor explained the various comments and actions by Mr. Masood regarding her religion and how it made her feel uncomfortable.

32. On or about February 7, 2017, Ms. Taylor again reached out to Rotator Staffing to inform them of the hostile environment she was being forced to endure by Mr. Masood.

33. On February 14, 2017, Mr. Masood called Ms. Taylor and told her that she was no longer employed as his executive assistant, that he had put in a request for a new executive assistant, and that she should no longer report to work.

34. Upon information and belief, Mr. Masood was made aware of Ms. Taylor's EEO complaint before he terminated Ms. Taylor.

35. Plaintiff relayed this termination from Mr. Masood to Rotator Staffing. Over the next month and a half, Ms. Taylor reached out to Rotator Staffing almost daily to inquire about placement in another position with MTA, or whether Rotator could place Ms. Taylor in a position with another one of their clients.

36. Unfortunately, Rotator continually stated that they would "get back to" Ms. Taylor. The only position that Rotator discussed with Ms. Taylor was returning to the same position with MTA from which she was terminated. Rotator asked Ms. Taylor whether she would be willing to go back to MTA and work with Mr. Masood, the very man whom she complained discriminated against. Rotator did not discuss or attempt to place Ms. Taylor in an alternate position at any time after she complained of discrimination.

37. Plaintiff was subjected to a hostile work environment based on her religion which was both severe and pervasive.

38. Plaintiff was terminated by Defendants MTA and NYCTA because of her religion.

39. Defendants MTA and NYCTA retaliated against the Plaintiff when they terminated her based on her good faith complaint of discrimination made to Defendant's EEO office.

40. Defendant Rotator Staffing retaliated against Plaintiff when they effectively terminated her by refusing to place her in another position in retaliation for her complaints of discrimination.

### FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII
### (Against MTA and NYCTA Only)

41. Plaintiff repeats and realleges each paragraph above.

42. Title VII prohibits employers from discriminating against an employee on the basis of an employee's religion.

43. As alleged herein, Defendants discriminated against the Plaintiff when they subjected her to a hostile work environment on the basis of her religion.

44. As alleged herein, Defendants discriminated against the Plaintiff when they terminated her on the basis of her religion.

### SECOND CAUSE OF ACTION
### RETALIATION UNDER TITLE VII
### (As Against All Defendants)

45. Plaintiff repeats and realleges each paragraph above.

46. Title VII prohibits employers from taking any adverse action against an employee on the basis of an employee's opposition to practices made unlawful under Title VII.

47. As alleged herein, Plaintiff engaged in protected activity when she complained of religious discrimination.

48. As alleged herein, Defendants MTA and NYCTA retaliated against the Plaintiff when they terminated her based on her complaints of discrimination.

49. As alleged herein, Defendant Rotator Staffing retaliated against Plaintiff by refusing to attempt to place her in another position after she complained of discrimination.

### THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER THE NYCHRL
### (As Against MTA and NYCTA Only)

50. Plaintiff repeats and realleges each paragraph above.

51. The NYCHRL prohibits employers from discriminating against an employee on the basis of an employee's religion.

52. As alleged herein, Defendants discriminated against the Plaintiff on the basis of her religion in violation of the provisions of the NYCHRL.

53. Under the NYCHRL, employers are strictly liable for the unlawful conduct of their supervisory employees.

### FOURTH CAUSE OF ACTION
### RETALIATION UNDER THE NYCHRL
### (As Against All Defendants)

54. Plaintiff repeats and realleges each paragraph above.

55. The NYCHRL prohibits employers from retaliating against any employee on the basis of an employee's opposition to conduct made unlawful by the NYCHRL.

56. As alleged herein, Defendants unlawfully retaliated against the Plaintiff on the basis of Plaintiff's participation in protected activity in opposition to the discriminatory acts by Defendants.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Curtayasia Taylor hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964 and the New York City Administrative Code § 8-107 in that Defendants illegally discriminated against and retaliated against the Plaintiff;

B. Awarding damages to Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practices and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: February 12, 2018
      New York, NY

      _____/s/DSS_____
      David S. Schwartz, Esq, (DS5982)
      Dorina Cela, Esq.
      Phillips & Associates, PLLC

45 Broadway, Suite 620<br>
New York, NY 10006<br>
Tel: (212) 248-7431<br>
Fax: (212) 901-2107<br>
Dschwartz@tpglaws.com<br>
Dcela@tpglaws.com