```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CURTAYASIA TAYLOR,

                                Plaintiff,                      18-CV-1278 (WHP)(OTW)

                -against-                                       MEMORANDUM OPINION & ORDER

METROPOLITAN TRANSPORTATION
AUTHORITY, et al.,

                                Defendants.
------------------------------------------------------------x
```

**ONA T. WANG, United States Magistrate Judge:**

This matter has been referred to me for two specific discovery disputes. Plaintiff Curtayasia Taylor ("Plaintiff") seeks to compel production of documents related to all formal complaints of religious discrimination or retaliation made in the past five years against Defendant Metropolitan Transit Authority ("MTA"). (ECF 60). Defendants MTA and New York City Transit Authority (collectively "Defendants"), in turn, seek to compel production of Plaintiff's employment records and Plaintiff's settlement agreement with Defendant Rotator Staffing Services ("Rotator"). (ECF 57). For the reasons described below, both parties' requests are DENIED.

I. **Background**

Plaintiff brings this action against Defendants MTA, New York City Transit Authority, and Rotator for, *inter alia*, Title VII discrimination and retaliation, alleging that while she was employed by the MTA, her supervisor Mr. Ashraf pressured her to convert to Islam. Compl. ¶¶ 15-28. When Plaintiff reported the incidents to Rotator, the staffing agency that placed her at

the MTA, Rotator referred the matter to MTA's Equal Employment Opportunity ("EEO") office. Compl. ¶ 30. A few days later, Plaintiff met with the EEO office and explained the nature of the harassment by Mr. Ashraf. Compl. ¶ 31. Approximately a week after the EEO meeting, Mr. Ashraf called Plaintiff and told her that she should no longer report to work. Compl. ¶ 33. After Rotator refused to place Plaintiff in a different position, Plaintiff filed this lawsuit. Compl. ¶ 36. Plaintiff subsequently reached a settlement with Rotator, and Rotator was dismissed from this action on April 26, 2019. (ECF 52).

On April 8, 2019, Plaintiff filed a letter request to compel production of all formal discrimination and retaliation complaints filed with the MTA within the past five years. (ECF 40). The undersigned held a discovery conference on May 1, 2019 and informed the parties that more facts were needed to properly adjudicate the dispute. On May 3, 2019, Defendants filed their own letter requesting that Plaintiff be compelled to produce her employment records and settlement agreement with Rotator. (ECF 57). The parties were subsequently directed to brief both letter motions to compel. (ECF 62).

**II.     Plaintiff's Request**

Federal Rule of Civil Procedure 26(b)(1) outlines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Plaintiff argues that discovery of all formal complaints made to the MTA is necessary to show Defendants' discriminatory animus. (ECF 60 at 3). She further asserts that such discovery would not be unduly burdensome because an EEO representative testified at deposition that a review of all potentially responsive complaints would take approximately 162.5 hours. (*Id*. at 1; ECF 60-1 at 23). Defendants respond that only complaints made against

2

Mr. Ashraf are relevant (and these complaints have already been produced), and that a search for all complaints at the MTA concerning religious discrimination or retaliation would be disproportionately burdensome. (ECF 68).

Where a plaintiff's disparate treatment discrimination claim requires use of comparators, evidence regarding similarly situated employees would be relevant. *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990). Courts have been hesitant, however, to expand the scope of discovery to all complaints company-wide where the individual plaintiff has not alleged a company-wide practice of discrimination. *See Curtis v. Citibank, N.A.*, 70 Fed. Appx. 20, 24 (2d Cir. 2003) (noting discovery often limited to those of plaintiffs' "supervisors and to their division"); *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 567 (S.D.N.Y. 2013). Here, not only is there no allegation that the MTA had a recurring problem with religious discrimination or retaliation, Plaintiff is not even bringing a disparate treatment claim.[1] Plaintiff is alleging specific instances of harassment expressly invoking Plaintiff's religion. Further, Plaintiff alleges that only Mr. Ashraf created a hostile work environment by pressuring her to convert to Islam. Compl. ¶¶ 19-28. In the absence of any showing that a comparator would be required, claims of other religious discrimination would not be relevant or necessary to Plaintiff's prosecution of this case.

---

[1] In her motion to compel, ECF 60, Plaintiff suggests that comparator evidence may be necessary to show that Plaintiff failed to adequately investigate her complaint due to a discriminatory animus. That claim is not found in the Complaint and thus may not be grounds for requiring production of documents. To the extent Plaintiff needs to rebut any *Faragher-Ellerth* defense, as argued at the May 1, 2019 conference, Plaintiff may evaluate and seek discovery on the sufficiency of Defendants' specific actions as to Plaintiff, *e.g.*, sufficiency of Defendants' pre-complaint investigation of Plaintiff's claims. Plaintiff provided no case law on why evidence of other religious discrimination complaints is necessary to rebut the *Faragher-Ellerth* defense. *See McGrath v. Nassau Cty. Health Care Corp.*, 204 F.R.D. 240, 244 (E.D.N.Y. 2001) (rejecting idea that *Faragher-Ellerth* defense put other post-harassment investigations at issue).

In contrast, retaliation claims have been treated by courts similarly to disparate treatment claims, permitting use of evidence regarding similarly-situated employees. *See Ri Sau Kuen Chan v. NYU Downtown Hosp.*, No. 03-CV-3003 (CBM), 2004 WL 1886009, at *5 (S.D.N.Y. Aug. 23, 2004) (finding plaintiffs must still refute defendants' non-retaliatory reasons). Plaintiff therefore will carry the burden of refuting any non-discriminatory justification given by Defendants for Plaintiff's termination. Records of other religious discrimination and retaliation complaints, especially the manner they were handled by Defendants, may therefore be relevant to Defendants' intent and knowledge.

Neither party has provided sufficient information, however, as to whether the sought discovery satisfies the proportionality factor of Rule 26. The assistant vice president of EEO investigations Antonio Seda testified that he "think[s] we can run" a "data analytic" query to efficiently determine the number of formal complaints involving a certain type of complaint. (ECF 68-1 at 3). Because neither party provided supplemental briefing on the issue, it is still an open question whether such a query is actually feasible. If the query ultimately proves to be unworkable, Defendants would be required to run a manual search of all complaints, which could impose a substantial burden on Defendants. (ECF 68 at 2).[2] To better understand the actual burden and expense imposed by searching for responsive documents, Defendants shall provide, by July 12, 2019, a supplemental submission: (1) attaching the full transcript of the May 2, 2019 deposition of Antonio Seda, and (2) identifying whether a digital "data analytic"

---

[2] Mr. Seda testified that a manual search may take 162.5 hours for assembling of the record and initial review of whether the "religious discrimination" or "retaliation" box was checked off on the initial complaint. (ECF 60-1 at 23). This does not account for the additional time needed to read the entire file to determine if subsequent claims of religious discrimination or retaliation were added. *See id*. This burden is further compounded by the fact that the EEO Investigations department currently only has three employees. *Id*. at 6.

query could be run to determine the number of formal complaints involving the New York City Transit Authority[3] specifically identifying religious discrimination and retaliation, as well as the time necessary to conduct such a query.

Accordingly, Plaintiff's motion is DENIED at this time without prejudice, with leave to renew following the filing of Defendants' supplemental submission. Such renewed letter request, if made, should include a more detailed explanation of the relevance of the sought discovery to Plaintiff's retaliation claim.

### III.     Defendants' Request

Defendants seek to compel (1) Plaintiff's personnel records from her other places of employment and (2) Plaintiff's settlement agreement in this matter with Rotator. (ECF 57). For personnel records, Defendants fail to show how records from Plaintiff's other places of employment are relevant to her discrimination and retaliation claims. Defendants' only proffered rationale is that at Plaintiff's deposition, she was unable to verify the dates of employment for her prior jobs and that her resume misrepresented the dates she worked at the MTA. (ECF 57 at 2). Defendants argue that this suggests that other portions of Plaintiff's resume may also be inaccurate. *Id*. In response, Plaintiff points out that she already produced job applications for jobs following her employment with the MTA and that any need to verify her employment history can be satisfied with Plaintiff's produced background check of Plaintiff's employment history. (ECF 58).

---

[3] At the May 1, 2019 Conference, Plaintiff's counsel agreed to limit the search to just City complaints, rather than the entire MTA.

As an initial matter, Defendants' request for all of Plaintiff's personnel records is quite broad and would implicate both privacy and logistical concerns. Defendants' reasons for justifying such a burden, in turn, are purely speculative. That some dates on Plaintiff's resume are incorrect does not grant Defendants the right to then examine every part of Plaintiff's employment history. To do so would violate the proportionality requirement in Rule 26. Defendants may verify facts concerning Plaintiff's employment history by reviewing documents already produced by Plaintiff, *i.e.*, Rotator's background check of employment history. Further, Defendants are still free to attack Plaintiff's credibility by referencing the discrepancies in her deposition as laid out in Defendants' letter. Therefore, Plaintiff will not be compelled to produce her personnel records.

Defendants seek production of Plaintiff' settlement agreement with Rotator but base their request on a conclusory assertion that the agreement "is relevant to the issue of Plaintiff's damages." (ECF 57 at 2). While settlement agreements may be relevant to a damages calculation, *see In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 3:07-CV-05944 (SC), 2015 WL 13756260, at *2-3 (N.D. Cal. July 31, 2015), Defendants fail to demonstrate how the requested settlement agreement is relevant to damages in this particular case, particularly where Plaintiff has alleged different acts (or failures to act) on the part of Rotator and the other Defendants. Without a showing of relevancy, the Court will not compel production of documents. *See Mason Tenders District Council of Greater New York v. Phase Constr. Serv., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) ("the burden of demonstrating relevance is on the party seeking discovery"); *Perkins v. Chelsea Piers Mgmt.*, No. 12-CV-8998 (ALC) (JCF), 2012 WL 4832814, at *1, (S.D.N.Y. Oct. 10, 2012) (finding failure to explain relevancy "fatal" to a motion

to compel). As a result, Defendants' request for the settlement agreement is denied at this time.[4]

## IV. Conclusion

As discussed above, Defendants shall file their supplemental submission by **July 12, 2019**. Plaintiff's motion to compel is hereby DENIED without prejudice to renew following Defendants' supplemental filing. Defendants' motion to compel is also DENIED.

**SO ORDERED.**

Dated: July 2, 2019
New York, New York

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge

---

[4] Moreover, Plaintiff's failure to address the settlement agreement in her opposition brief, in addition to the absence of any discussion of the issue at the May 1, 2019 Conference, suggests that the parties have not met and conferred on this issue as required by the Court's Individual Practices and Federal Rule of Civil Procedure 37(a).

7