UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

CURTAYASIA TAYLOR,

            Plaintiff,

-against-

METROPOLITAN TRANSPORTATION
AUTHORITY, *et al.*,

           Defendants.

----------------------------------------

18cv1278

<u>MEMORANDUM & ORDER</u>

WILLIAM H. PAULEY III, Senior United States District Judge:

      Plaintiff Curtaysia Taylor moves for judgment as a matter of law notwithstanding the verdict and for a new trial under Federal Rules of Civil Procedure 50(b) and 59(a), respectively. On September 12, 2019, after deliberating for approximately two hours, a jury returned a verdict in Defendants' favor. For the reasons that follow, Taylor's motions are denied.

      At trial, the jury did not reach the substance of Taylor's hostile work environment and retaliatory discharge claims. Rather, it found that Taylor failed to establish a joint employer relationship between the New York City Transit Authority ("Transit") and Rotator Staffing, the temporary staffing agency that placed Taylor at Transit.

      In its jury instructions, this Court explained that:

> The standard for whether an entity is a joint employer under both federal and city law is functional, and is determined by whether the entity shares control with the direct employer as to hiring, firing, discipline, pay, insurance benefits, employment records, and supervision of an employee of the direct employer. If you do not find that the New York City Transit Authority and Rotator Staffing were joint employers, you must find the New York City Transit Authority not liable.

(Trial Tr., ECF No. 121-1 ("Tr."), at 772:25–773:8.) Notably, this instruction tracked the parties' joint request to charge. (See ECF No. 103, at 9.)

During deliberations, the jury submitted a note asking: "Under the definition of joint employer do all conditions need to be satisfied? Most? Some? One?" (Tr. at 800:5–6.) Before responding to the jury's note, this Court conferred with counsel and ultimately informed the parties that it was "going to tell [the jury] there's no precise test. The factors identified in the charge are merely factors that they can consider in determining whether the defendant is a joint employer." (Tr. at 803:7–10 (emphasis added).) In response, Taylor's counsel stated "[n]o objection." (Tr. at 803:11.) This Court then answered the jury's note as follows:

> The joint employer doctrine construes the term "employer" functionally, and there is no precise test. The factors identified in the charge are factors that you can consider in making your determination. To reiterate, a joint employer relationship may be found to exist where there is sufficient evidence that the defendant had immediate control over the other company's employees. Relevant factors include commonality of hiring, firing, discipline, pay, insurance records, and supervision.

(Tr. at 803:24–804:7.) Beyond articulating that there is no precise test, this Court added that "[w]e hope that this responds to your question. If it doesn't, send us another note, and we will try again." (Tr. at 804:8–9.) The jury did not ask for further clarification.

Now, Taylor argues that this Court should enter judgment as a matter of law notwithstanding the verdict or grant her a new trial. A motion for judgment as a matter of law notwithstanding the verdict "may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in h[er] favor." Stevens v. Rite Aid Corp., 851 F.3d 224, 228 (2d Cir. 2017) (quotation marks omitted). "The standard is a high one, met only in rare occasions. The movant, generally, must be able to show a complete absence of evidence supporting the verdict [such] that the jury's findings could only have been the result of sheer surmise and conjecture." Conte

v. Emmons, 895 F.3d 168, 171 (2d Cir. 2018) (alteration in original) (quotation marks and citation omitted).

"[T]o order a new trial under Rule 59(a), [a court] must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." Uzoukwu v. Krawiecki, 2016 WL 6561300, at *2 (S.D.N.Y. Nov. 4, 2016) (quotation marks omitted); see Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir. 2003). The standard under Rule 59(a) is "less stringent" than Rule 50(b) because "(1) a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." Manley, 337 F.3d at 244–45 (quotation marks omitted).

Taylor argues that this Court should grant her motion for the following reasons: (1) there was overwhelming evidence that Rotator Staffing and Transit were joint employers, (2) the joint-employer test was not properly articulated during jury instructions, (3) the jury's inquiry about the joint-employer test was not answered directly, and (4) the jury instructions did not clarify that the joint-employer test does not require an analysis of whether Ashraf—a Transit employee—was Taylor's supervisor. Taylor's arguments are meritless.

First, the evidence that Transit and Rotator Staffing were joint employers was decidedly underwhelming. Stephen Rogers—the Deputy Chief of Consultant Servicers for Transit—gave ample, unrebutted testimony that Transit was not Taylor's employer.

Taylor's second and third arguments about the jury instructions on the joint-employer test and the response to the jury's note are misplaced. The final jury instruction delivered by this Court regarding the joint-employer test tracked the instruction proposed by the

3

parties in their joint request to charge almost verbatim. And immediately after instructing the jury, this Court asked counsel at the sidebar whether they had any additional requests to charge or any objections to the charge—to which Taylor's counsel answered "[n]o, your Honor." (Tr. at 794:4.) Finally, with respect to this Court's proposed response to the jury note, Taylor's counsel again stated that he had no objection. (Tr. at 803:11.)

Moreover, there is no indication the jury was confused. In the jury instructions, this Court explained that "there is no precise test" for a joint-employer determination and that the factors are merely factors the jury "can"—not must—consider. (Tr. at 803:24–804:7.) Elsewhere in the jury instructions, this Court specifically articulated when a test required the jury to find that the plaintiff proved each element. (See Tr. at 773:18–19 ("Taylor must prove by a preponderance of the evidence each of the following elements . . . ."); 776:24–777:1 ("To prevail on a claim for hostile work environment under City Law, plaintiff must prove the following four elements by a preponderance of the evidence . . . .").) Further, in response to the jury's note, this Court stated that "[w]e hope that this responds to your question. If it doesn't, send us another note, and we will try again." (Tr. at 804:8–9.) The jury did not send any further questions.

Lastly, Taylor argues that because two of the joint-employer factors (hiring and firing) appeared in the definition of "supervisor" under the employer liability section of the jury charge, the jury was confused into believing that the joint-employer test required an analysis of whether Ashraf was Taylor's supervisor. In other words, Taylor argues that the jury imputed the "tangible employment action" test from the definition of supervisor into the joint-employer test. This argument is meritless.

The jury instruction on the joint-employer test said nothing about analyzing whether Ashraf was a supervisor, and it is unclear how the jury would have been led to believe

4

such.  Indeed, the joint-employer test instruction did <u>not</u> mention tangible employment action.  Rather, this Court listed whether "the entity <u>shares control</u> with the direct employer as to hiring, firing, discipline, pay, insurance benefits, employment records, and supervision of an employee of the direct employer" as factors.  (Tr. at 773:2–5 (emphasis added).)  Put simply, the defining characteristic of the joint-employer test was whether Transit and Rotator Staffing shared these duties.  While the definition of supervisor also contained the words "hiring" and "firing," it was in a completely different context—namely, whether Transit granted Ashraf the ability to take tangible employment actions.  (Tr. at 782:17.)

Taylor has clearly failed to show that "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice," Uzoukwu, 2016 WL 6561300, at *2, to warrant a new trial under Rule 59(a), much less the higher standard imposed by Rule 50(a).

<u>CONCLUSION</u>

For the foregoing reasons, Taylor's motions are denied.  The Clerk of Court is directed to terminate the motion pending at ECF No. 121.

Dated: December 27, 2019
     New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.